BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

IN RE DELTA AIR LINES FLIGHT 4819     MDL DOCKET NO. \_\_\_\_
ON FEBRUARY 17, 2025

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS DELTA AIR LINES, INC.'S AND ENDEAVOR AIR, INC.'S JOINT MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS</u>**

Defendants Delta Air Lines, Inc. ("Delta") and Endeavor Air, Inc. ("Endeavor") (collectively "Defendants"), jointly submit this Memorandum of Law in support of their motion, pursuant to 28 U.S.C. § 1407, to transfer the cases identified in the annexed "Schedule A" (the "Pending Actions") to the United States District Court for the District of Minnesota (St. Paul Division), for coordinated or consolidated pretrial proceedings of all Pending and future actions in that District.

**<u>INTRODUCTION</u>**

This Panel routinely transfers and consolidates actions arising out of a single aviation accident. The Pending Actions all arise from an accident involving Delta Flight 4819 (operated by Endeavor) at Toronto Pearson International Airport, in Toronto, Ontario, Canada, on February 17, 2025 (the "Accident"). Upon the landing, the aircraft overturned and slid down the runway. There are 11 Pending Actions in three (3) different U.S. District Courts, and Defendants expect additional actions will be filed. The Pending Actions thus satisfy all of the requirements for transfer and consolidation as set forth in 28 U.S.C. § 1407 and the caselaw interpreting it.

Consolidation and transfer would streamline discovery and pretrial litigation, and prevent inconsistent rulings concerning factual and legal issues common to the Pending Actions and likely

future actions. It would conserve judicial resources, and the parties' resources, including those of most Plaintiffs.

The Panel should transfer and consolidate all actions in the U.S. District Court for the District of Minnesota for combined or coordinated pretrial proceedings. The District of Minnesota has the most, and most substantial, connections to the Accident of any U.S. District and would be the most convenient and logical location in the United States for a significant majority of parties and potential parties.

Flight 4819 departed from Minneapolis, Minnesota. Nine (9) of the 11 Pending Actions are already pending within that District. Flight 4819 was operated by Endeavor, a U.S. certificated air carrier and wholly owned subsidiary of Delta. Endeavor is headquartered and has its principal place of business in Minneapolis, which also is the location of key witnesses, documents, and other evidence pertaining to the Accident. Most 4819 passengers and crew members reside in Minnesota or nearby states. It is also the most convenient District for the vast majority of parties based on the residences of Plaintiffs in the Pending Actions and other passengers who could file suit. The District of Minnesota's docket demonstrates that it can expeditiously handle and litigate all actions, and has extensive experience handling MDLs.

In contrast, the two other Districts where cases are pending—the Northern District of Georgia and the Southern District of Texas—have far lesser connection to the Accident. Apart from Delta's headquarters in the Northern District of Georgia, there is no connection between the Accident and that District. Also, there is no substantive connection between the Accident and the Southern District of Texas apart from the fact that one Pending Action Plaintiff resides and filed suit there. Travel to those Districts would be more inconvenient for the majority of parties and potential parties. Those Districts also have busier dockets than the District of Minnesota.

Accordingly, Defendants move the Panel to: (a) transfer all Pending Actions to the U.S. District Court for the District of Minnesota; (b) combine all Pending Actions for coordinated or consolidated pretrial proceedings in the District of Minnesota; and (c) designate any future actions relating to Flight 4819 as "tag-along actions," transfer them to the District of Minnesota, if not already there, and combine them for pretrial proceedings with the already-filed Pending Actions.

## BACKGROUND OF THE LITIGATION

The Pending Actions, and all potential future actions, arise from an accident upon landing of Delta Flight 4819 on February 17, 2025. *See* Motion, at ¶¶ 1–9, 16–20. Flight 4819, operated by Endeavor, departed from Minneapolis-Saint Paul International Airport with a destination of Toronto Pearson International Airport. *See id.*, at ¶¶ 1-2. There were 76 passengers and four (4) crew members onboard. *See id.*, at ¶ 4.

Upon landing in Toronto, Flight 4819 rolled over and came to rest upside-down. *See id.*, at ¶ 7. There were no fatalities arising from the Accident, but some of those onboard, including Plaintiffs in the Pending Actions, allege that they sustained bodily and/or emotional injuries and economic losses as a result of the Accident. *See id.*, at ¶ 8. Plaintiffs claim that these injuries and losses are Delta's and Endeavor's fault, and not the fault of any other party. *See id.*, at ¶¶ 20.d, 20.h. Defendants deny these allegations. The Transportation Safety Board of Canada is conducting an investigation, which is ongoing, and has approved storage of the aircraft wreckage in Ontario, Canada. *See id.*, at ¶ 9.

To date, there are 11 actions pending in three (3) U.S. District Courts, representing 14 passengers. *See id.* at ¶¶ 10, 12. Nine (9) such actions are in the District of Minnesota and have been assigned to Judge Jerry W. Blackwell in the St. Paul Division. *See id.*, at ¶¶ 12.a, 13.a-i, 32.

One Pending Action is pending in the Northern District of Georgia, Atlanta Division, and another in the Southern District of Texas, Houston Division. *See id.*, at ¶¶ 14–15.

The complaints in all Pending Actions make similar, if not identical allegations concerning the Accident, liability, and the applicability of the Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal, May 28, 1999 (the "Montreal Convention"), ICAO Doc. No. 9740 (entered into force November 4, 2003) *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734. *See* Motion, at ¶¶ 16–20. Defendants anticipate that additional Flight 4819 passengers will file actions, and that they will assert the same, or substantially similar, factual and legal allegations. *See id.*, at ¶¶ 21–22.

## ARGUMENT

Transfer and consolidation of all Flight 4819 actions would further the goals of 28 U.S.C. § 1407. All Pending Actions assert nearly identical allegations that the Plaintiffs sustained personal and emotional injuries, and economic losses, arising from the Accident. Historically, this Panel has transferred actions arising from a single aviation accident and combined them for pretrial proceedings, and it has done so to promote judicial efficiency and to eliminate duplicative discovery and the risk of inconsistent rulings. For these same reasons, the Pending Actions should be transferred and consolidated to streamline the pretrial litigation process.

This Panel also typically selects as the transferee District the District most convenient for all parties and with the greatest connection to the accident. In this case, that is the District of Minnesota. Minnesota is the home of Endeavor, the air carrier that operated Flight 4819, and the location of relevant witnesses and information. Nine (9) of the 11 Pending Actions are already there. Flight 4819 also departed from the Minneapolis-St. Paul International Airport, and, upon information and belief, a majority of passengers are residents of Minnesota. Most other passengers

live closer to Minnesota than any other potential transferee District, making Minnesota the most convenient District in the United States for all parties and potential parties.

**A.   U.S. district courts have jurisdiction over all Pending Actions and potential future actions.**

Federal courts have original jurisdiction over all Pending Actions and every potential future action arising from Flight 4819 pursuant to 28 U.S.C. § 1331 because all such actions necessarily arise under Article 33 of the Montreal Convention. Flight 4819 was international carriage by air—from the United States (Minnesota) to Canada (Toronto, Ontario). *See* Motion, at ¶¶ 1–2; ¶¶ 7–10. Because both the United States and Canada signed and adopted the Montreal Convention, a treaty, the Convention is the law of the United States and creates federal question jurisdiction. *See* Montreal Convention, *supra*; *see also, e.g.*, *In re Air Crash at Georgetown, Guyana on July 30, 2011*, 895 F. Supp. 2d 1355, 1356 (J.P.M.L. 2011) (acknowledging applicability of Montreal Convention to aviation accidents); *see also* Motion, at ¶ 20.a (all Plaintiffs acknowledging same).

There is no question that federal courts, and this Panel, have jurisdiction over all Pending Actions and any potential future actions, including to transfer and consolidate or combine any such actions for pretrial proceedings.

**B.   All litigation arising out of Flight 4819 should be consolidated for pretrial proceedings pursuant to 28 U.S.C. § 1407.**

Section 1407 of the United States Code governs multidistrict litigation and provides in pertinent part:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

28 U.S.C. § 1407(a).

The goal of § 1407 is to ensure just and efficient conduct of multidistrict litigation like the Pending Actions. By transferring and consolidating cases before one court, § 1407 minimizes conflict and duplication in discovery and other pretrial procedures in related cases. *See In re Air Crash off Long Island, N.Y. on July 17, 1996*, 965 F. Supp. 5, 7-8 (S.D.N.Y. 1996).

Indeed, as the District of Minnesota held, "[t]he transfer to a single jurisdiction, for pretrial proceedings, of numerous cases pending in various district courts, affords the opportunity for centralized, coordinated and consolidated management thereby avoiding the chaos of conflicting decisions and fostering economy and efficiency in judicial administration." *In re Exterior Siding & Aluminum Coil Litig.,* 538 F. Supp. 45, 47 (D. Minn. 1982).

This Panel has likewise recognized that "[aviation accidents] present a prime example of the need which gave rise to the enactment of Section 1407" thereby justifying transfer and consolidation. *See In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979,* 476 F. Supp. 445, 447 (J.P.M.L. 1979). The Panel regularly transfers and consolidates litigation arising from aviation accidents; examples are numerous and go back years, including in cases where the Montreal Convention, or its predecessor, the Warsaw Convention,[1] apply. *See, e.g.*, *In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979*, 476 F. Supp. at 447.; *see also, e.g.*, *In re Air Crash Into the Java Sea on January 9, 2021*, 669 F. Supp. 3d 1368, 1371 (J.P.M.L. 2023); *In re Air Crash Over the S. Indian Ocean on March 8, 2014*, 190 F. Supp. 3d 1358, 1360 (J.P.M.L. 2016); *In re Air Crash at San Francisco*, 987 F. Supp. 2d 1378, 1379 (J.P.M.L. 2013); *In Re Air Crash at*

---

[1] Convention for the Unification of Certain Rules Relating to International Transportation by Air, concluded at Warsaw, Poland, October 12, 1929, 49 Stat. 3000, T.S. No. 876,137 LN.T.S. 11 (1934), *reprinted at* 1934 WL 29042.

*Georgetown, Guyana on July 30, 2011*, 895 F. Supp. 2d 1355, 1357 (J.P.M.L. 2012); *In re Air Crash Near Rio Grande, P.R. on Dec. 3, 2008*, 787 F. Supp. 2d 1361, 1362 (J.P.M.L. 2011); *In re Air Crash at Madrid, Spain on Aug. 20, 2008*, 672 F. Supp. 2d 1378, 1379 (J.P.M.L. 2010); *In re Air Crash over Mid-Atl. on June 1, 2009*, 706 F. Supp. 2d 1372, 1374 (J.P.M.L. 2010); *In re Air Crash Near Clarence Ctr., N.Y. on Feb. 12, 2009*, 655 F. Supp. 2d 1355, 1356-57 (J.P.M.L. 2009).[2] The Panel has done so even when the accident occurred in a different country. *See, e.g.*, *In re Air Crash Into the Java Sea on January 9, 2021*, 669 F. Supp. 3d at 1368; *In re Air Crash over the S. Indian Ocean*, 190 F. Supp. 3d at 1358-59.

The reason is that, as the Panel has noted, such actions "involve common questions of fact, and [] centralization in the [the transferee District] will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." *In Re Air Crash at Georgetown, Guyana on July 30, 2011*, 895 F. Supp. 2d at 1356; *see also In re Crash Near Medan*, 544 F. Supp. 2d at 1380; *In re Air Crash Near Peixoto de Azeveda*, 493 F. Supp. 2d at 1376; *In re Air Crash Near Athens*, 435 F. Supp. 2d at 1341; *In re Air Crash Disaster at Chattanooga, Tenn. on Nov. 27, 1973*, 393 F. Supp. 1406, 1407 (J.P.M.L. 1975) ("... common factual questions abound among [multidistrict aviation accident] actions on the issue of liability").

In this case, all Pending Actions allege common issues of fact as to: (1) Plaintiffs' alleged injuries; (2) how such injuries occurred; (3) and fault and liability. *See* Motion, at ¶¶ 8, 16–19,

---

[2] *See also, e.g., cotd.*, *In re Air Crash Over Makassar Strait, Sulawesi, Indonesia on Jan. 1, 2007*, 626 F. Supp. 2d 1354, 1354 (J.P.M.L. 2009); *In re Air Crash at Tegucigalpa, Honduras on May 30, 2008*, 598 F. Supp. 2d 1368, 1368 (J.P.M.L. 2009); *In re Crash Near Medan, Indonesia, on Sept. 5, 2005*, 544 F. Supp. 2d 1379, 1379 (J.P.M.L. 2008); *In re Air Crash Near Peixoto de Azeveda, Brazil, on Sept. 29, 2006*, 493 F. Supp. 2d 1374, 1374 (J.P.M.L. 2007); *In re Air Crash Near Athens, Greece, on Aug. 14, 2005*, 435 F. Supp. 2d 1340, 1340 (J.P.M.L. 2006); *In re Air Crash Near Kirksville, Mo., on Oct. 19, 2004,* 383 F. Supp. 2d 1382, 1383 (J.P.M.L. 2005); *In re Air Crash at Belle Harbor, N.Y., on Nov. 12, 2001*, 203 F. Supp. 2d 1379, 1379 (J.P.M.L. 2002).

20.b-d, 20.h. Likewise, these cases present common legal issues for which transfer and consolidation would also "promote the just and efficient conduct of the litigation." *See In Re Air Crash at Georgetown, Guyana on July 30, 2011*, 895 F. Supp. 2d at 1356. These legal issues include, *inter alia*: (1) the applicability of the Montreal Convention; (2) and the determination of recoverable damages. *See* Motion, at ¶¶ 20.a, 20.e-f, 20.i.

Future actions arising from Flight 4819 necessarily would raise the same factual and legal issues. *See id.*, at ¶¶ 20–22. This Panel has held that the likelihood that other similar claims may be brought, which also would be subject to transfer and consolidation, weighs in favor of transfer of the Pending Actions. *See, e.g., In re Air Crash at Georgetown*, 895 F. Supp. 2d at 1357 (consolidating actions arising from an air crash and noting that future passenger actions were anticipated); *In re Air Crash Near Clarence Ctr. N.Y.*, 655 F. Supp. 2d at 1356 (holding in its Order on a motion to centralize that the subject aircraft "was carrying many more passengers and, accordingly, additional lawsuits possibly may evolve.").

The Panel should follow its own precedent regarding prior aviation accidents, and transfer and consolidate all Flight 4819 cases for coordinated pretrial proceedings.

**C.     All actions should be transferred to, and consolidated in, the U.S. District Court for the District of Minnesota.**

The District of Minnesota is the most appropriate transferee court. This Panel previously has considered the following factors when selecting the forum for multidistrict litigation:

- The location of evidence;
- The convenience of the selected forum for all parties;
- The pendency of cases in the selected transferee court; and

8

- Docket conditions of potential Districts and their respective abilities to handle multidistrict litigation.[3]

*See, e.g.*, *In re Air Crash Disaster near Chicago,* 476 F. Supp. 445, 447–50 (J.P.M.L. 1979); *In re Air Crash Into the Java Sea on January 9, 2021*, 669 F. Supp. 3d at 1368; *In re Air Crash over the S. Indian Ocean*, 190 F. Supp. 3d at 1358; *In re Air Crash at San Francisco*, 987 F. Supp. 2d at 1378; *In Re Air Crash at Georgetown, Guyana on July 30, 2011*, 895 F. Supp. 2d at 1355); *In re Air Crash near Rio Grande, P.R. on Dec. 3, 2008*, 787 F. Supp. 2d at 1361; *In re Air Crash at Madrid, Spain on Aug. 20, 2008*, 672 F. Supp. 2d at 1378; *In re Air Crash over Mid-Atl. on June 1, 2009*, 706 F. Supp. 2d at 1372; *In re Air Crash near Clarence Ctr., N.Y. on Feb. 12, 2009*, 655 F. Supp. 2d at 1355.[4]

For all Pending Actions and potential future actions, all factors favor Minnesota. First, Minnesota is the location of key evidence. Although the Accident occurred in Canada and the wreckage is there, essentially all other U.S.-based evidence known to date and relating to liability, including witnesses and documents, is located in Minnesota. *See* Motion, at ¶¶ 1, 6, 23–24. Minnesota is the location of Endeavor's headquarters and where Flight 4819 boarded and departed. *See id.*, at ¶¶ 1–4, 23–24. In contrast, there is no material connection between the Accident and either Georgia or Texas or any witnesses, or other evidence likely to be found in either District. Although Delta's headquarters are in Atlanta, Delta did not operate Flight 4819. Endeavor was the

---

[3] The Panel also has considered the location of the aircraft wreckage in prior aviation accident cases. *See generally id.* Here, the wreckage is in Ontario, Canada, and thus cannot be tied to a particular District. *See also* Motion, at ¶ 9. To the extent that the Panel considers the location of the wreckage, however, Defendants note that Minnesota is closer to Canada than Georgia and Texas.

[4] *See also*, *supra* note 2.

operating carrier and employed and trained the flight and cabin crew. *See id.* Apart from Canada, there will be little liability evidence found anywhere but Minnesota.

Second, and for similar reasons, Minnesota is the most convenient U.S. District for all parties. Nine (9) of 11 Pending Actions already are there. *See Id.*, at ¶¶ 12–15. Those actions cover 14 of 76 passengers. *See id.* Of the remaining 62 passengers, more than half (36) reside in Minnesota. *See id.* at ¶ 28. Subtracting those 36, 14 of 26 remaining passengers reside in Canada, and Minnesota is closer to them than Georgia or Texas. *See id.*, at ¶¶ 28–29. Indeed, all Canadian passengers who have filed actions so far did so in Minnesota. *See id.* at ¶¶ 13, d-i. After subtracting the Canadian passengers, of the 12 passengers who remain, six (6) are closer to Minnesota than Georgia or Texas (those in Wisconsin, Michigan, Ohio, and Idaho), and three (3) passengers' residences are unknown. *See id.*, at ¶¶ 28–29. In sum, Minnesota is more convenient for the majority of current and potential parties.

Third, there are more than four (4) times as many Pending Actions filed in the District of Minnesota than the other two Districts—the Northern District of Georgia and the Southern District of Texas—combined (nine (9) to two (2)). Plus, given the statistics above, the number of cases filed in Minnesota is likely to grow.

Fourth, the docket conditions appear more favorable in the District of Minnesota than in either the Northern District of Georgia or the Southern District of Texas. The District of Minnesota has far fewer pending cases. *See id.*, at ¶¶ 36–38. The disparity favoring the District of Minnesota would increase if a single MDL comprising 8,292 cases (*In re Bair Huggar Forced Air Warning Devices Products Liability Litigation*, MDL No. 2666) was removed from the Panel's analysis. *See id.*, at ¶¶ 31, 36–38. The Panel should consider docket conditions in each potential District independent of that MDL because it has been pending for ten (10) years, is pending in a different

10

Division than where the Pending Actions in Minnesota have been assigned, before a different judge than the one assigned to the Minnesota Pending Actions, and the number of individual cases in that MDL skews the District of Minnesota's overall docket statistics. *See id.*, at ¶¶ 31–40. Thus, while the District of Minnesota, the Northern District of Georgia, and the Southern District of Texas all have comparable weighted filings per judgeship (*see id.*, at ¶¶ 39–40), that figure would favor the District of Minnesota if *In re Bair Huggar Forced Air Warning Devices Products Liability Litigation* were properly evaluated and discounted.

Further, the seven (7) pending MDLs in the District of Minnesota attest to that District's ability to handle this litigation. Indeed, the judge assigned to the Minnesota Pending Actions, Judge Jerry W. Blackwell, already is overseeing an MDL of a comparable size. *See id.*, at ¶ 32.

The Panel often considers the "center of gravity" of a multidistrict litigation when selecting the proper transferee District. Here, that is indisputably the U.S. District Court for the District of Minnesota, where: (1) the U.S. based evidence is located; (2) it would be the most convenient location in the U.S. for all parties to litigate; (3) most Pending Actions have already been filed there; and (4) there resides a judge and court capable of expeditiously handling Flight 4819 cases.

## CONCLUSION

For the foregoing reasons, Defendants Delta and Endeavor, respectfully submit that all actions identified on Schedule A, and all future Flight 4819 actions, should be transferred to the District of Minnesota, St. Paul Division, for coordinated or consolidated proceedings in accordance with 28 U.S.C. § 1407 and its progeny, as well as for the promotion of expeditious and just resolution of all Flight 4819 cases.

Dated: May 22, 2025            **Hinshaw & Culbertson LLP**

*/s/ Michael G. McQuillen*

Michael G. McQuillen, Esq.
151 N. Franklin Street
25th Floor
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001
mmcquillen@hinshawlaw.com

Attorney for Defendants Delta Air Lines, Inc. and Endeavor Air, Inc.
*Attorneys for Defendants Delta Air Lines, Inc. and Endeavor Air, Inc.*